UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| COLLIEN BILLY ALBERT, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 3:15-CV-46-PPS-CAN |
|  | ) |  |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

An administrative law judge denied Collien Albert's application for Social Security disability insurance benefits and supplemental security income. In this appeal Albert claims that the ALJ erred by not properly analyzing Albert's impairments in combination, failing to provide substantial evidence to support his RFC assessment, and failing to include any limitations in the RFC for Albert's mild mental limitations or use of his prescribed back brace and cane. Because I find that the ALJ's opinion was not supported by substantial evidence, I will **REMAND** his decision for further consideration and development of the record consistent with the issues discussed in this opinion.

## BACKGROUND

At the time of his hearing before the ALJ in August 2013, Albert was a 52 year old high school graduate and stood 5'6" tall and weighed 200 pounds. [R. 42.] He was working as a machine operator and a handler for Light House Industries in Michigan City, Indiana until October 2008. [R. 43, 254.] Prior to that, he had worked in maintenance and construction for the Michigan City Housing Authority and also worked as a temp assembling parts for generators. [R. 44-45.] All of these jobs involved standing and lifting more than 20 pounds. [R. 45.]

Albert stopped working in October 2008 because of his medical conditions. Albert filed for disability benefits and supplemental security income on August 13, 2012 alleging the onset date of August 4, 2012. [R. 22.] The claims were initially denied, and then again upon reconsideration. Subsequently, Albert filed a written request for a hearing.

Albert has a number of medical problems that he is dealing with. At the hearing, Albert testified along with a vocational expert. Albert told the ALJ that he suffered from pain in his lower back, feet, ankles, and legs (using a cane to help support him when he walks or stands), type 2 diabetes, sleep apnea, numbness in his hands and feet, trouble reaching above his head and out in front of him, tremors in his hands, difficulty sleeping, forgetfulness, depression, blurry vision, shortness of breath, and has to wear a back brace because his L3 and L4 were damaged in a car accident. [R. 47-54.] Albert testified that he was taking Lyrica, Tramadol, Flexeril, and a few more medications for

2

his pain that he could not recall and also was taking Metformin and Diacom for his diabetes. [R. 48.] He also testified that he uses a CPAP machine at night for his sleep apnea. [R. 48-49.]

The ALJ issued a decision denying benefits. [R. 22-32.] At Step One, the ALJ found that Albert met the insured status requirements of the Social Security Act, and that he has not engaged in substantial gainful activity since August 4, 2012, the alleged onset date. [R. 24.] At Step Two, the ALJ concluded that Albert had the following severe impairments: spinal disorder(s); diabetes; obesity; and hypertension. [R. 24.] The ALJ found Albert also suffered from chronic obstructive pulmonary disease (COPD), sleep apnea, and depression, but that they are non-severe impairments. [R. 24-25.]

At Step Three, the ALJ concluded that Albert does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. [R. 26.] At Step Four, the ALJ found that Albert had the capacity to perform "light work" as that term is defined in SSR 83-10, but with the following limitations:

> Albert is limited to no more than the occasional climbing of ramps and stairs; however he is unable to climb ladders, ropes, or scaffold. He is limited to no more than occasional balancing, stooping, kneeling, crouching, or crawling. He must avoid concentrated exposure to extreme temperatures of heat and cold, and must avoid concentrated exposure to breathing irritants, such as fumes, odors, dusts and gases, and must avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights.

[R. 26.] At Step Five, the ALJ found that Albert could not perform any past relevant work but that there was a sufficiently significant number of jobs in the national economy that he could perform. [R. 31.]

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [DE 1-1.] Albert timely sought review of that decision by filing this case. [DE 1.]

## **DISCUSSION**

If an ALJ's findings are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Review of the ALJ's findings is deferential. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). "Although this standard is generous, it is not entirely uncritical and the case must be remanded if the decision lacks evidentiary support." *Id.* (internal quotation marks omitted). In making a substantial evidence determination, I must review the record as a whole, but I cannot re-weigh the evidence or substitute my judgment for that of the ALJ. *Id.*

In making his findings, an ALJ must build a logical bridge from the evidence to the conclusion. *Grooves v. Apfel,* 148 F.3d 809, 811 (7th Cir. 1998). That bridge must be sufficiently developed to allow me to assess the validity of the ALJ's findings. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). An ALJ may not "cherry-pick" from the

4

medical record in order to support a denial of benefits. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). An ALJ also may not substitute his own judgment for that of a medical professional, or make medical conclusions about a claimant's illness, without relying on medical evidence. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). An ALJ is not required to accept or reject every medical opinion he is presented with whole cloth, but he is required to base his decision as to what to accept or reject on substantial evidence. *See Bentley v. Colvin*, No. 3:14CV1589, 2015 WL 5714156, at *5 (N.D. Ind. Sept. 28, 2015).

I do not believe that the ALJ built a logical bridge from the evidence to his conclusion in his RFC determination. One of the things that I find troubling is that the ALJ's conclusion in his RFC determination is directly contrary to the opinions of both a state agency examining physician and a different treating physician. I am further troubled by the fact that the ALJ afforded the medical source statement supplied by that same treating physician little weight because of lack of objective evidence to support it, yet it contains many of the same opinions as the state agency examining physician's report after a consultative examination of Albert. In addition, it appears that the ALJ rendered an independent assessment regarding Albert's postural limitations without evidence to support his conclusion. I will address these points in turn.

On October 5, 2012, Dr. Smejkal, a state agency physician, conducted a consultative examination of Albert and confirmed anatomical deformities in the lumbar spine due to scoliosis as well as spinous and paraspinal tenderness throughout the spine and negative straight leg raising bilaterally. [R. 364-66.] Dr. Smejkal noted that

Albert "has shortness of breath on exertion" and "has weakness and poor balance." [R. 365.] He also noted Albert's slow and slightly bent gait and use of a cane due to poor balance caused from back pain and that he was unable to stoop and squat. [R. 366.] Dr. Smejkal noted, however, that Albert had a normal range of motion in his spine, upper extremities, and lower extremities. [*Id.*] Dr. Smejkal also noted that Albert was able to walk heel to toe with difficulty, get on and off the examination table with difficulty, and to stand from the sitting position with difficulty. [*Id.*] His conclusive impression of Albert was that: 1) he has a history of scoliosis and chronic back pain for which he wears a brace; (2) he has sleep apnea and uses a c-pap machine; (3) he has diabetes mellitus not controlled by medication; (4) he has a history of asthma; and (5) he has high blood pressure controlled by medication. [R. 367.]

In his June 5, 2013 Medical Source Statement (MSS), Albert's treating physician, Dr. Quardi, noted many similar issues. He said that Albert's standing and/or walking were affected by his impairment, that he cannot walk for more than 300 feet without developing weakness due to neurogenic claudication, and he has limitations in his upper and lower extremities for both pushing and pulling. [R. 421-22.] He agreed that Albert was unable to stoop. [R. 423.] He also noted that Albert could not climb ramps, stairs, ladders, ropes, or scaffolds, nor could he balance, kneel, crouch, or crawl. [R. 423.] He also said that Albert could only occasionally lift less than 10 pounds and was unable to lift any weight frequently. [R. 421.]

6

Two state agency physicians, Dr. Corcoran and Dr. Sands, came to decidedly different conclusions about what Albert could do although without ever physically examining him. Based on a review of Albert's medical records Dr. Corcoran and Dr. Sands concluded that he had the residual functional capacity to: occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; stand or walk six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; unlimited push and/or pull; unlimited lift and/or carry; and no postural, manipulative visual, communicative, or environmental limitations. [R. 112-119, 131-139.]

The ALJ seems to have sided with the consulting physicians on certain issues, specifically finding that Albert could occasionally balance, stoop, kneel, crouch, or crawl, which is inconsistent with the examining and treating physicians' evaluations. In general, examining physicians are afforded more weight than non-examining physicians. 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a course who has examined you than to the opinion of a source who has not examined you."); *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015). It is unusual for an ALJ to reject an examining SSA doctor's opinion because doctors hired by the agency are unlikely to be biased toward claimants the way treating physicians may be, and they are unlikely to exaggerate a claimant's disabilities. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). So when an ALJ *does* outright reject or even discount an examining SSA doctor's opinion, he must provide a good explanation for doing so. *Beardsley*, 758 F.3d at 839.

7

Here, the ALJ either rejected or failed to consider Dr. Smejkal's conclusion that Albert could not stoop or squat without any explanation for doing so, failing to provide substantial evidence to support his conclusion that Albert could occasionally stoop. Furthermore, Dr. Smejkal also stated that Albert has a slow, bent gait, uses a cane, was only able to walk heel to toe, get on and off the examination table, and stand from a sitting position *with difficulty*, has shortness of breath on exertion, and has weakness and poor balance, yet the ALJ concluded that Albert can stand for 6 hours or lift up to 20 pounds without so much as addressing the evidence to the contrary. This must be remedied on remand. *See Moore*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." (internal citations omitted)).

Dr. Quardi, Albert's treating physician, provided similar opinions to those of Dr. Smejkal's, including that Albert could not stoop or squat and had several other postural limitations, as well as additional external limitations. [R. 421-23.] The ALJ, however, afforded the MSS supplied by Dr. Quardi "little weight" due to a lack of objective evidence to support his conclusions. [R. 29.] But as I have discussed, many of Dr. Quardi's opinions were similar to, if not the same as, those of Dr. Smejkal's. Furthermore, to the extent that Dr. Quardi's opinions differ from those of the agency

8

physicians, for example their conclusions that Albert had normal motor activity, the ALJ should evaluate the factors found in the "treating source" rule of 20 C.F.R. 404.1527(c)(2) including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. The ALJ failed to delve into any of these except supportability and even then only stated that "there is a lack of objective evidence to support [Dr. Quardi's opinion that Albert has upper and lower extremity weakness]," despite the fact that it was consistent with Albert's testimony at the hearing. [R. 29-30.] Furthermore, the ALJ also countered Dr. Quardi's statement that Mr. Albert "cannot walk for more than 300 feet without developing weakness [R. 421]" by stating that Albert said he walks for exercise. [R. 30.] Albert's statement does not, in fact, contradict Dr. Quardi's because Albert stated that he could not walk more than *one-half of a block* without stopping to rest only to walk back to the house – walking a total of one block. [R. 53.] The ALJ's decision to give Dr. Quardi's opinions little weight is not supported by substantial evidence.

In addition, the ALJ's failure to consider Dr. Smejkal's and Dr. Quardi's opinions that Albert is unable to stoop is significant because if Albert was in fact unable to stoop occasionally, then the list of possible occupations that he was still qualified to perform would be significantly reduced.

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary

9

> occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9p. The ALJ's finding that Albert could occasionally stoop — as opposed to Dr. Smejkal's and Dr. Quardi's opinion that Albert could stoop less than occasionally — could well be the only difference between the conclusion that Albert is disabled or not. In other words, the error could not be deemed harmless.

Furthermore, it seems that the ALJ split the difference between the agency consulting physicians' opinions and the agency examining and treating physicians' opinions regarding Albert's additional postural limitations. The ALJ concluded that Albert was restricted to the occasional balancing, stooping, kneeling, crouching, or crawling, as well as occasional climbing of ramps and stairs, but unable to climb ladders, ropes, or scaffolds. [R. 26.] Yet the consulting agency physicians found no postural limitations. By contrast, Dr. Smejkal concluded that Albert was unable to stoop or squat and Dr. Quardi found that Albert was unable to climb ramps, stairs, ladders, ropes, scaffolds, nor could he balance, kneel, crouch, crawl, or stoop. The ALJ seems to have averaged these opinions in determining that Albert was capable of many of these actions occasionally, yet he provides no explanation for doing so. It appears that the ALJ may have impermissibly rendered an independent assessment without substantial supporting evidence to support his conclusion. *See Myles v. Astrue*, 582 F.3d

672, 677 (7th Cir. 2009). The ALJ, therefore, has failed to build the requisite logical bridge between the evidence and his conclusion.

Given the multiple errors in the ALJ's RFC assessment, a remand to reassess the RFC is warranted. On remand, the ALJ needs to explain the reasoning behind his RFC assessment and build a clear and logical bridge from the medical evidence to his finding.

## CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: March 31, 2016

s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
